IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PAMELA A. GRADY and ) | |
| RICHARD A. GRADY, ) | Civil Action No. 3:11-cv-232-CMC |
| ) | |
| Plaintiffs, ) | OPINION AND ORDER |
| ) | ON MOTION FOR |
| v. ) | SUMMARY JUDGMENT |
| ) | |
| STEVEN DEESE, BENTLEY INDUSTRIES, INC. ) | |
| ENCORE BOAT BUILDERS, LLC, ) | |
| MARINE EAST, INC., d/b/a MarineEast.com, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| and ) | |
| ) | |
| MARINE EAST, INC., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MARINER SAIL AND POWER YACHTS, INC., ) | |
| and MARINE TOOL, INC., ) | |
| ) | |
| Third-Party Defendants. ) | |
| _____ ) | |

Through this action, Plaintiffs Pamela A. Grady ("Pamela") and Richard A. Grady ("Richard") (collectively "the Gradys") seek recovery for damages flowing from an injury Pamela suffered on July 5, 2010, in North Carolina. That injury consisted of the loss of a finger which was severed when it was caught in the "pinch point" between the handrail and open gate of a pontoon boat. In their complaint, the Gradys allege that Defendant, Marine East, Inc. ("Marine East") is at least partially responsible for that injury because of defects in a finger-pinch guard ("ball guard") which Marine East designed and sold and which was installed on the Gradys' pontoon boat.

In its answer, Marine East denies that it has any responsibility for Pamela's injury (or Richard's loss of consortium claim). Dkt. No. 25 (answer filed March 21, 2011). Marine East's defense rests primarily on assertions that it is not the entity which manufactured and sold the particular ball guards which were installed on the Gradys' boat. Dkt. No. 25 ¶ 7 (denying "that it designed, manufactured, marketed, or sold the plastic ball guards that were allegedly on the boat that is the subject of this action"). Instead, Marine East asserts that the ball guards at issue were sold by Mariner Sail and Power Yachts, Inc. and Marine Tool, Inc., ("Predecessor Corporations") which Marine East names as Third-Party Defendants. *Id.* Marine East concedes, nonetheless, "that it has manufactured and sold ball guards after December 19, 2007," when it "purchased the good will and assets" of the Predecessor Corporations. *Id. ¶¶* 7, 11; *see also id.* ¶ 40 (referring to purchase of "good will, assets and products" from Predecessor Corporations).

This matter is before the court on Marine East's motion for summary judgment. Marine East argues, first, that it cannot be held liable under a successor liability theory because the Gradys have failed to plead any successor liability claim. It further argues that no such claim could succeed under the facts of this case because the transaction through which it acquired the rights to sell the ball guard did not include an assumption of any relevant liabilities. Finally, Marine East argues that there is no evidence that any defect in the ball guard caused Pamela's injury. For the reasons set forth below, Marine East's motion is granted in part and denied in part.

**STANDARD**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as amended December 1, 2010). It is well established that summary judgment should be

granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and direct the court to "particular parts of materials in the record" which support the nonmoving party's claims or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## DISCUSSION

### I.     The Gradys' Failure to Assert Successor Liability Claims

The Gradys have been on notice of Marine East's defense that it is not the entity which manufactured or sold the particular ball guard at issue since Marine East filed its answer on March 21, 2011. Despite this long-standing notice, the Gradys have not sought to amend their complaint

either to allege successor liability claims against Marine East or to add the Predecessor Corporations (or their owner) as Defendants in this action. The nature of Marine East's purchase of assets, goodwill and products has, however, been explored through discovery, suggesting that all parties have been on notice that the Gradys intended to seek to hold Marine East liable under a successor liability theory.

The Gradys' failure to assert successor liability claims against Marine East in the original complaint is both understandable and excusable given information included on Marine East's website which suggested that Marine East was "founded" by David Thomas who designed the ball guards. *See* Dkt. No. 78 at 7, Argument § III. B. The original confusion (caused by Marine East) does not, however, excuse the Gradys' subsequent failure to seek to amend the complaint to assert a successor liability claim after receipt of Marine East's answer and a reasonable period for related discovery. Notably, the schedule in this action has been extended by consent on multiple occasions, with two of the amendments extending the deadline for amendment of pleadings. *See* Dkt. No. 14 (setting original amendment deadline of May 24, 2011); Dkt. No. 33 (extending amendment deadline to June 24, 2011); Dkt. No. 64 (extending amendment deadline to August 23, 2011). The latest amendment deadline fell over five months after Marine East filed its answer.

The Gradys have not, even now, filed a motion to amend the complaint. They do, however, suggest that Marine East has been on notice of the Gradys' intent to pursue Marine East on a successor liability theory given that the issue was explored in discovery. They also assert that "[w]ith the court's permission, Plaintiffs will amend their complaint to allege successor liability pursuant to Rule 15, FRCP." Dkt. No. 78 at 8.

4

The Gradys' suggestion that they are willing to amend their complaint is too little, too late. First, the suggestion of a willingness to amend is not a motion to amend, which would normally attach the proposed amended complaint. For related reasons, the suggestion fails to give notice of the factual allegations or the specific theories on which the Gradys rely (though it might be assumed they would mirror the arguments raised in opposition to Marine East's motion). The delay in seeking to amend is particularly significant given that the Gradys' suggestion of an intent to amend comes after the close of discovery and in response to a motion for summary judgment. Finally, the Gradys' present memorandum fails to demonstrate good cause for their delay in seeking to amend, particularly in light of the twice-extended amendment deadline.

Despite these considerations, the court will not rest its summary judgment determination on the absence of an express successor liability claim. Instead, it determines, on the merits, that there are no facts which might support successor liability under any legally viable theory suggested by the Gradys' responsive memorandum.

## II.     Governing Law

Before considering the merits of the Gradys' potential successor liability theories, the court must determine which states' laws control. For reasons explained below, the court concludes that New Jersey law controls any determination based on the contract through which Marine East purchased assets, good will, and other rights from the Predecessor Corporations and North Carolina law controls any determination based on other successor liability theories.

In a diversity action, federal courts apply the forum state's choice of law rules. *Klaxon v. Stentor*, 313 U.S. 487 (1941). Thus, the court first looks to South Carolina law.

In tort actions, South Carolina follows the doctrine of *lex loci delicti*, that is, it applies the substantive law of the place where the injury occurred. *Thornton v. Cessna Aircraft Co.*, 886 F.2d 85 (4th Cir. 1989). Here, the injury occurred in North Carolina. Thus, North Carolina law would apply to the extent successor liability claims are founded on tort law.

South Carolina also generally gives effect to choice of law provisions freely entered in a contract. *See Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643 (4th Cir. 2010). Here, the transaction which potentially gives rise to successor liability is evidenced by a written contract which provides that the contract will be governed by New Jersey law. Therefore, to the extent successor liability turns on interpretation of the contract through which Marine East acquired rights from Predecessor Corporations, New Jersey law controls.

### III.    Successor Liability

Under North Carolina law, a successor corporation is not normally liable for the predecessor's liabilities unless one of the following four "exceptions" is present:

> (1) there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) the transaction amounts to a de facto merger of the two corporations; (3) the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) the purchasing corporation is a "mere continuation" of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers. Some [North Carolina] cases cite inadequate consideration for the purchase, or a lack of some of the elements of a good faith purchaser for value, as separate exceptions, . . . although those are generally considered only as additional factors in determining whether the transaction was for the purpose of avoiding creditors' claims, . . . or whether the new corporation is a mere continuation of the old one.

*Budd Tire Corp. v. Pierce Tire Co.*, 370 S.E.2d 267 (N.C. Ct. App. 1988) (noting North Carolina case law, though less recent than some cases cited, had adopted essentially the same exceptions);

*see also Atwell v. DJO, Inc*., 803 F. Supp. 2d 369, 372 (E.D. N.C. 2011) (relying on *Budd* for the general rule followed in North Carolina). Each of these potential bases is addressed below.

### A.     Express or Implied Assumption of Liabilities

In determining whether there was an express or implied assumption of liability, the court looks to the intent of the parties to the relevant transaction. As noted above, that transaction is evidenced by a written contract which is construed under New Jersey law. Thus, interpretation of this particular basis for imposing successor liability under North Carolina law, ultimately requires a look at New Jersey law regarding construction of contracts.

New Jersey follows the general rule that contract terms which are clear and unambiguous should be enforced as written. *See, e.g., Watson v. City of East* Orange, 815 A.2d 956, 959 (N.J. 2003) ("when the terms of a contract are clear and unambiguous, there is no room for construction and the court must enforce those terms as written"). Surrounding circumstances may, however, be considered as a means of interpreting the writing, but not to modify its terms. *Id.*

The Gradys do not argue that there has been any express assumption of liability. Instead, they argue that Marine East "impliedly assumed the liabilities of the [Predecessor Corporations]." The Gradys draw this conclusion from the following evidence: (1) before closing, the owner of the Predecessor Corporations informed Marine East's owner "of a potential finger pinch claim" (by someone other than Pamela Grady); (2) both the seller and buyer understood the Predecessor Corporations would dissolve soon after the purchase, leaving them unavailable to respond to any litigation; (3) the purchase price was negotiated by individuals with knowledge of the potential claim; (4) the agreement included an indemnity provision; and (5) Marine East acquired liability insurance.

The above facts do not support an inference of implied liability. As Marine East points out, the asset purchase agreement referred to assumption of specified liabilities which were "described as trade payables, accruals and taxes." The agreement also stated that the liabilities which were assumed were listed on an "Exhibit C," which the Predecessor Corporations' owner does not recall ever seeing and Marine East's owner denies ever existed.

For purposes of the present order, the court will assume that the absence of Exhibit C creates an ambiguity as to precisely what liabilities were assumed and that this ambiguity opens the door for the Gradys to present extrinsic evidence of intent. The proffered extrinsic evidence consists primarily of the vague notice of a potential claim and assertion that Marine East purchased liability insurance. This evidence is insufficient to suggest an implied assumption of tort liability for events which had not yet occurred because it is equally consistent with non-assumption of liability as with assumption of liability. Moreover, even if the information provided regarding one possible finger-pinch claim was sufficient to suggest assumption of liability for that claim, it would not be enough to suggest assumption of liability for future similar claims.

More significant is the actual language of the agreement. First, the agreement "describe[s]" the categories of assumed liabilities as "trade payables, accruals, and taxes." It also indicates that these are "specific" items capable of being set forth on a list and that the list "represent[s] the complete and accurate list of liabilities that exist[ed] as of the last financial statement of SELLER dated the 31st day of December , 2006[,]" with no subsequent material change "outside the ordinary course of business." Collectively, this language suggests that the list would include only normal business expenses.

8

The potential claim to which the Gradys refer, not even a contingent liability at that point, is not likely to appear on such a list. Indeed, the relevant deposition testimony suggests only that the owner of the Predecessor Corporations shared that he had been informed by another agent for the Predecessor Corporations that a customer (Bentley Industries, L.L.C., also a Defendant in this action) had (1) mentioned a finger injury, (2) asked if it could return previously purchased ball guards, and (3) been informed that it could do so. The Predecessor Corporations' owner had not received any further information regarding the injury and the ball guards had not been returned. Nothing in this limited disclosure suggests more than minimal notice of the possibility of a rather non-specific claim. It does not suggest the existence of an actual claim which was likely to be listed on a list of "specific liabilities" which might reasonably be "described as trade payables, accruals and taxes." Neither does it suggest a general assumption of liabilities for injuries which, like Pamela Grady's injury, might occur in the future.

The mere facts that (1) the agreement contained an indemnification provision and (2) Marine East purchased liability insurance likewise fail to suggest an implied assumption of liabilities. The inclusion of the indemnity provision is consistent with the other terms of the contract (including assumption of specified liabilities), so does not support an inference of some broader assumption of liabilities. Similarly, the purchase of insurance is consistent with the operation of any business and, therefore, fails to give rise to an inference of assumption of general liabilities of the Predecessor Corporations.

**B.     De Facto Merger**

The Gradys do not argue that there has been a de facto merger.[1]

---

[1] Because it does not turn on the intent of the parties, the de facto merger and remaining theories are governed solely by North Carolina law.

### C. Fraudulent Purpose

The Gradys offer only a vague suggestion of fraudulent purpose in noting that the owner of the Predecessor Corporations was on notice of the possibility of a finger-pinch claim and that both the Predecessor Corporations and Marine East understood that dissolution of the Predecessor Corporations would leave the potential claimant with no entity against which to proceed.[2] This is not sufficient to support a claim that the transaction itself was entered with fraudulent intent as there is no suggestion that the sale was for less than fair market value of the assets or that Marine East was not a good faith purchaser for value.

The minimal nature of the notice also weighs against any assumption the sale was made for the purpose of avoiding liability. At most, Marine East received vague, third-hand notice that there might be some claim in the future for an unspecified finger-pinch injury which occurred prior to the sale. The liability arguably evaded was not, in any event, the liability at issue in this action, which relates to a *later* injury.

Finally, it is not clear that any person with a claim against the Predecessor Corporations is without any remedy. Upon dissolution of the Predecessor Corporations, their assets presumably were distributed to their owner. Pursuit of a claim against the owner through a veil piercing claim might, therefore, be an available option.

In sum, the Gradys have presented only the slightest hint of a possible improper motive by the *Precedessor* Corporations and their owner. This is not enough, especially as the entity to be held

---

[2] This argument is, presumably, an alternative to the argument of implied assumption of liability as the two are inherently inconsistent: there could be no intent to leave potential claimants without relief if there was an implied assumption of liability.

liable is the *Successor* Corporation which has no common ownership or other link to the Predecessor Corporations.[3]

### D.     Mere Continuation

In arguing that Marine East is a "mere continuation" of the Predecessor Corporations, the Gradys rely on the eight-factor "substantial continuity" test applied in certain federal common law cases. *See* Dkt. No. 78 at 9 (addressing *U.S. v. Carolina Transformer Company*, 978 F.2d 832 (4th Cir. 1992) (applying doctrine to claims under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 ("CERCLA") ).[4] However, as explained in *Atwell*, North Carolina has not adopted the substantial continuity doctrine or other more liberal tests for imposing successor liability. *Atwell*, 803 F. Supp. 2d at 373 (noting "North Carolina courts have explicitly rejected" the continuity of enterprise and substantial continuity tests).

For a corporate successor to meet the "mere continuation" exception as applied in North Carolina, two factors must be established: (1) only one corporation remains after the transfer of assets; and (2) there is an identity of stockholders and directors between the two corporations. *G.P.*

---

[3] The Gradys also rely on a footnote from a Maryland case in arguing that a successor corporation's knowledge that a predecessor's product is defective and likely to cause injury may support a finding of successor liability based on the fraudulent intent or an independent but related doctrine. *See* Dkt. No. 78 at 11 (discussing *Nissen Corporation v. Miller*, 594 A.2d 564, 569 n.2 (Md. Ct. App. 1991) (noting that case before that court did not involve an allegation that the successor knew of the potential tort liability at the time of purchase, which might give rise to successor liability under the fourth exception or as an alternative to the continuity of enterprise theory)). There is nothing to suggest that North Carolina would follow the rule suggested by dicta in the footnote in *Nissen*, particularly in light of its failure to expand the bases for successor liability in other contexts. *See* Discussion § III .D. *infra* ("Mere Continuation")

[4] Marine East also relies on this decision in its opening memorandum. Dkt. No. 75-1 at 17-18. It does not, however, explain how this Fourth Circuit decision applying federal common law to a federal statutory claim predicts North Carolina law.

11

*Publ'ns v. Quebecor Printing-St. Paul, Inc.,* 481 S.E.2d 674, 680 (N.C. Ct. App. 1997). North Carolina courts have declined to adopt more liberal standards including those reflected in the "substantial continuity" or "continuity of enterprise" tests. *Id.* at 680-81. Instead, they continue to emphasize the necessity for a continuity of stockholders and directors. *Id.*; *see also Atwell*, 803 F. Supp. 2d at 372 (discussing North Carolina's failure to expand bases for imposing successor liability).

There is no evidence of any overlap between the shareholders and directors of Predecessor Corporations and Marine East. It follows that the Gradys cannot establish that Marine East is a mere continuation of the Predecessor Corporations under North Carolina law.

### E.     Conclusion as to Successor Liability

For reasons discussed above, the record does not support imposition of successor liability on Marine East for claims arising from Predecessor Corporations' manufacture or sale of ball guards under any legal theory applicable under North Carolina law (or New Jersey law as to the first exception). The court, therefore, grants Marine East's motion for summary judgment to the extent the Gradys might assert any successor liability theory of recovery.

## IV.    Direct Liability

The Gradys also argue that Marine East may be liable for breach of an independent duty to warn. *See* Dkt. No. 78 at 12-14 (relying on Restatement (Third) of Torts (Products Liability) § 13). Marine East did not address this potential theory of recovery in its opening memorandum and has not filed a reply. The court has, therefore, independently reviewed the Gradys' complaint and finds sufficient reliance on breach of a duty to warn to conclude that such a claim was raised. The

Gradys' claim for breach of an independent duty to warn (which arose after the asset purchase), thus survives Marine East's motion for summary judgment.

**V.     Causation**

Marine East also argues there is no evidence of causation. This argument rests on an overly limited interpretation of the testimony of the Gradys' expert who opined that the "root cause" of the Pamela's injury was a defectively designed handrail and gate. The expert also opined that the defectively designed ball guard contributed to the injury. This evidence is sufficient to support an inference of causation as there can be more than one cause of an injury.

## CONCLUSION

For the reasons set forth above, Defendant Marine East, Inc.'s motion for summary judgment is granted to the extent the Gradys may rely on any theory of successor liability. This does not, however, fully dispose of the claim(s) against Marine East as it may potentially be liable for breach of an independent duty to warn.

IT IS SO ORDERED.

                                                        s/ Cameron McGowan Currie
                                                        CAMERON MCGOWAN CURRIE
                                                        UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 2, 2012